# Crouse's Appeal.

If, after articles of agreement for the sale of land, the premises be sold as the property of the vendor, for a sum greater than the amount the vendee was to pay by the articles, the vendee is entitled to the difference in preference to a judgment-creditor of the vendor, whose lien attached after the date of the articles. Siter, James & Co.'s Appeal, 2 *Casey* 178.

Where the estate of the vendor was encumbered, it was no abandonment of the contract on the part of the vendee, to purchase in an encumbrance, have the property sold at sheriff's sale, and become the purchaser himself.

The costs incident to the sale, are to be deducted out of the proceeds applicable to the creditors of the vendor, and not out of the surplus accruing to the vendee.

APPEAL from the Common Pleas of *Chester county.*

This was an appeal by Levi H. Crouse from the decree of the Court of Common Pleas of Chester county, distributing the pro-

cceds of the sale of the real estate of Jacob Crouse, in which the parties agreed upon the following statement of facts.

1856.   July 14.   It is agreed between. Matthew Stanley and Levi H. Crouse, claimants of the money in court, that the following statement be submitted for the decree of the court, to have the same effect as if reported by an auditor; either party having the right to appeal to the Supreme Court.

Jacob Crouse, the defendant, was the owner of certain real estate in Wallace township, which, by articles of agreement dated December 7, 1855, he sold and agreed to convey to his brother, Levi H. Crouse, on the 1st day of April then next, for $2009, subject to the lien of "the judgment or dower of Mary Williams," the principal sum being $757.

At the date of the articles, the vendor owed to the vendee and the firm of which the vendee was a member, more than $100. The vendor directed the vendee to credit him on the books of the vendee and the firm with $100—the earnest money.   This was accordingly done under date of December 7, 1855, the date of the article.

The lien described as " the judgment or dower of Mary Williams," is a mortgage to secure the payment of an annuity to Mary Williams, the mother of the vendor and vendee, as widow of John Williams, deceased, the annuity being the interest of the said principal sum of $757, payable to the said widow during life; the principal to be paid the heirs and legal representatives of the said decedent at her death.   These payments were thus secured by the said Jacob Crouse at the time he purchased the greater part of the land, a small portion of it having been subsequently purchased, and not being subject to this lien.   By arrangement made with the parties in interest at the time of Jacob Crouse's purchase, it was intended this lien should remain undisturbed during the life of Mrs. Williams, the principal being part of the purchase-money.   Besides this lien, the land was subject to the lien of a prior judgment to Benjamin Griffith for $1000, and a judgment subsequent to the Williams mortgage, in favour of Hester Kirkpatrick, entered May 17, 1855, on a bond with warrant of attorney, dated March 14, 1855, conditioned for the payment of $300 on the —— day of March, 1856.

On December 14, 1855, two judgments were entered in the Court of Common Pleas of Chester county, in favour of Matthew Stanley against Jacob Crouse on bond with warrants, each dated December 13; one for the payment of $969 on the 15th of the same month with interest; the other for the payment of $531 on the 1st day of April then next with interest.   On the first-mentioned judgment, Stanley issued a *fi. fa.* December 17, 1855, under which certain personal property of the defendant, including

some hay, straw, &c., mentioned in the article of agreement as sold to Levi H. Crouse, was levied on and sold. The personal property mentioned in the article of agreement and sold under Stanley's execution, had remained in the barn on the premises. Stanley received from the sale of the personal property $144.77, besides costs. Under the same *fi. fa.* the land of Jacob Crouse, sold by the above-mentioned articles, was levied on and condemned. At the time of the execution of the bonds to Matthew Stanley, he had notice of the execution and delivery of the above-stated articles of agreement to Levi H. Crouse.

About the same time, Stanley instituted proceedings before Judge HAINES against Jacob Crouse under the Act of July 12, 1842, abolishing imprisonment for debt, on the allegation of fraudulent concealment and assignment of his personal property, and also of a fraudulent sale of the above-mentioned real estate, to his brother, Levi H. Crouse. A warrant of arrest having been issued and a hearing had, the judge dismissed the complaint and released the said Jacob Crouse from arrest.

Under these circumstances, *and acting under the advice of counsel*, Levi H. Crouse, on the 11th day of February, 1856, applied to Hester Kirkpatrick, and purchased from her the above-mentioned judgment in her favour against Jacob Crouse, and took an assignment on the bond on which it was entered; and on the 12th of the same February issued a *fi. fa.* in the name of Hester Kirkpatrick to April Term, 1856, and levied on the land sold by Jacob to Levi. Jacob, by writing filed, waived an inquisition and authorized the sheriff to sell under the *fi. fa.* The land was accordingly sold by the sheriff to Levi H. Crouse for $2800, at a public sale, he being the highest bidder.

The money in court is part of this sum. On 24th of April, after the sale, Kirkpatrick's judgment was marked on judgment docket to use of Levi H. Crouse. The judgment in favour of Benjamin Griffith being a prior lien to the Williams mortgage, the lien of the latter was divested by the sale; but, as the parties interested in the mortgage did not desire to receive the moneys secured by it, they agreed with Levi H. Crouse, after the sale, that the mortgage should continue to be a lien on the land in the hands of Levi H. Crouse, with the same legal effect as if it had been the first lien on the land, the principal sum secured thereby to be deducted from the purchase-money. This agreement was reduced to writing and entered of record on the margin of the record of said mortgage, and in the records of the deed kept in the recorder's office of Chester county.

The sum of $2800, bid by the said Levi at the sheriff's sale, with $17.03 for interest, which accrued on the purchase-money till the execution of the sheriff's deed, amounting to $2817.03, was distributed by sheriff, as follows, viz. :

[Crouse's Appeal.]

| | |
|---|---:|
| Benjamin Griffith, judgment, interest, and costs, | $1063.78 |
| Deduct amount of Williams' mortgage and interest, | 759.73¾ |
| Levi H. Crouse, owner of Hester Kirkpatrick's<br>judgment, principal, interest, and costs, | 321.12 |
| | $2144.63¾ |

Leaving in the sheriff's hands $672.39¼. Of this sum, Levi H. Crouse, as purchaser under the articles, claims $100, amount of earnest money paid by him; the sum of $34, the difference between the sum fixed by the articles of agreement as purchase-money and the amount the said Levi bid as purchaser at the sheriff's sale. These sums, amounting to $134, the sheriff retained in his hands to await the decision of the court. He paid $31.92 for costs; the balance, $505.16, has been received by Matthew Stanley under his judgment against Jacob Crouse.

The questions for the opinion of the court, are :—

1. Whether, under the facts stated, the said Levi H. Crouse is entitled to receive, as purchaser, the two sums of $100 and $34?

2. Whether the costs of the sale are properly payable out of the purchase-money of the said land, as bid at said sheriff's sale?

The court below, after argument, decreed the balance to Matthew Stanley. From this decree Levi H. Crouse appealed.

*Bell*, for appellant.—From the execution of the articles Levi acquired an equitable estate; not merely to the extent of the purchase-money paid, but in the entire tract. Jacob held the legal title as security for the unpaid purchase-money: Siter, James & Co.'s Appeal, 2 *Casey* 178 ; Ives *v.* Cress, 5 *Barr* 122; Richter *v.* Selin, 8 *S. & R.* 440.

So if the interest of the vendee is encumbered by judgments and sold, the purchaser stands in his shoes, and may call for a conveyance, on paying the purchase-money: Fasholl *v.* Reed, 16 *S. & R.* 266 ; Ives *v.* Cress, 5 *Barr* 122.

The creditors of the vendor whose liens attach after the sale, have a lien only commensurate with the vendor's interest, and that is for the unpaid purchase-money; and if the vendee becomes the purchaser at a sheriff's sale, for a larger sum than he had agreed to pay, he is entitled to the difference: Siter, James & Co.'s Appeal, 2 *Casey* 98.

Where a vendor sells the interest of a vendee for the purchase-money, he is entitled to the proceeds in preference to a prior judgment against the vendee: Love *v.* Love, 4 *Watts* 470 ; Day *v.* Lowrie, 3 *Watts* 412; Wilson *v.* Story, 10 *Watts* 636. And such sale conveys the whole estate, legal and equitable, whether the vendor or a stranger be the purchaser: Chew's Executors *v.*

[Crouse's Appeal.]

Matthews, 1 *P. R.* 476; Purviance *v.* Lemmon, 16 *S. & R.* 292; Russell's Appeal, 3 *Harris* 319.

*P. Frazer Smith,* for appellee.—The appellant claims this balance on the ground that he was the equitable owner of the land; and that if it cannot be enforced literally, yet he may have it as far as the circumstances will permit, by receiving the proceeds beyond what he owed under the articles. If that cannot be done, the vendor and his lien creditors stand as if the agreement had not been made: Dentler's Appeal, 11 *Harris* 506. It is plainly deducible from the case of Siter, James & Co.'s Appeal, 2 *Casey* 178, that if by default of the vendor the land be sold by the sheriff, he has no equity. If therefore Levi before the 1st April, 1856, purchased this judgment without Jacob's consent and sold the land under it, he could not claim performance to any extent: *Platt on Cov.* 595, 1 *Law Lib.* 266; *Id.* 570; Ford *v.* Tiley, 6 *B. & C.* 325, 13 *E. C. L.*; *Chit. on Con.* 738; *Id.* 742; *Co. Litt.* 206 b; 2 *Sto. Eq. Jur.* § 736; *Id.* 771. Here the case is stronger. The avowed object of the parties was the abandonment of the title under the contract, to obtain a better by a sheriff's sale. How can he claim under an abandoned contract? He could not, even under these circumstances, recover the money from the vendor: *Ch. on Con.* 742; Power *v.* North, 15 *S. & R.* 12.

The opinion of the court was delivered by

LOWRIE, J.—Levi Crouse bought by articles of agreement from Jacob Crouse a tract of land, then charged with liens; and shortly afterwards others were entered. This, together with a charge attempted to be established that the purchase was in fraud of creditors, having embarrassed the completion of the title, he bought one of the prior liens and had the land sold upon it by the sheriff, and became himself the purchaser for a sum considerably exceeding the prior liens and for a small sum over his contract price. To whom does this latter surplus belong? It is plain enough that it belongs to Levi; for the subsequent liens were good only against the unpaid purchase-money, and after the discharge of the prior liens.

It is argued that by having the land sold, he abandoned or extinguished the contract. But that depends upon an intention that nowhere appears, and upon the right to abandon which does not seem to us to have existed. The embarrassments to the perfecting of the title are sufficient to account for and justify this mode of perfecting it or getting clear of it by a sheriff's sale, and prohibit us from treating his act as an abandonment of it. If, by this procedure, he gained any undue advantage over others at the sale, the court below would have corrected it. If his contract

[Crouse's Appeal.]

was a fraud upon creditors, they could have shown it, and the surplus would have been theirs. We think, too, that the execution costs must come out of the proceeds, and not out of Levi's share; for, the charge of fraud being abandoned, we find no fault in him.

DECREE.—This case came on for hearing at the present term, on the appeal of Levi H. Crouse from the decree of distribution of the Common Pleas of Chester county, and was argued by counsel; and on full consideration thereof, it is ordered and decreed that the said decree be reversed, and that the money in the Court of Common Pleas in the said case be paid to the said appellant, to wit, the sum of one hundred and thirty-four dollars; and that the appellee, Matthew Stanley, do pay the costs of this appeal; and the record is remitted to the said court for execution.