**In re VISITING NURSE ASSOCIATION OF WESTERN PENNSYLVANIA, Debtor.**

**K. Lawrence KEMP, Trustee for Visiting Nurse Association of Western Pennsylvania, Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services; United States of America; Blue Cross of Greater Philadelphia; Vanguard Federal Savings Bank, Defendants.**

**Bankruptcy No. 88–649 PGH.**
**Adv. No. 88–195.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 12, 1989.

K. Lawrence Kemp, Pittsburgh, Pa., trustee.

Sanford B. Ferguson, Pittsburgh, Pa., for defendant, Vanguard Federal Sav. Bank.

Alan E. Cech, Pittsburgh, Pa., for defendant, U.S.

## OPINION AND ORDER

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Debtor, Visiting Nurse Association of Western Pennsylvania ("VNA"), filed its voluntary petition for relief under Chapter 7 on March 8, 1988. The facts in this case have been stipulated. VNA was a home care agency which provided home nursing services and which received its funding from the Secretary of Health and Human Services ("Medicare") under a cost reimbursement arrangement. Periodic interim payments ("PIP") were made by Medicare based on the prior year's costs. At the end of the year, a reconciliation to actual cost was to have been made between Medicare and VNA. VNA ceased providing patient services by November 9, 1987.

Between November 13, 1987 and December 21, 1987, VNA had several contacts with Medicare. On November 20, VNA advised Medicare by telephone that payments should no longer be mailed to its bank, but rather be forwarded directly to VNA. This conversation was confirmed by letter of the same date. On December 8, 1987, VNA telephoned Medicare and requested an arrangement to pick up a check on December 11, 1987. Medicare telephoned VNA on December 9, 1987 with the arrangements for VNA to pick up the check. On December 11, 1987, a representative of VNA picked up a payment in person from Medicare in the amount of $78,-737.31. Medicare was advised on December 22, 1987 by VNA that services had been stopped and that the check for $78,-737.31 was not cashed and had been put in escrow.

VNA placed the monies received from Medicare into a separate account in a different bank. The monies remained in that account until the trustee took possession of them in the bankruptcy proceeding.

Vanguard Federal Savings Bank ("Vanguard") claimed a secured status with respect to said account. This court previously ordered the trustee to pay from such funds the remaining balance of VNA's obligation to Vanguard subject to any claim of Medicare.

The trustee has filed a Complaint to Determine Secured Status and/or for Declaratory Judgment declaring that the funds are property of the bankruptcy estate free of any claims. The Secretary of Health and Human Service, United States of America, et al, on behalf of Medicare (collectively "Medicare") assert that the monies belong to the United States. Medicare claims that VNA breached its fiduciary relationship and would be unjustly enriched if permitted to keep the funds. Medicare further asserts that the funds were held by VNA in a constructive trust. Vanguard agrees with the trustee's position that the funds are property of the bankruptcy estate and thus, Vanguard is entitled to payment as a secured party.

### Discussion

The PIP program is an administrative expedient. Rather than requiring a health

care provider to submit bills to it every two weeks, costs from one year are used as a benchmark for the next. Approximate payments based upon the prior year's expenses for the same period are made. Then a final accounting is made at the end of the fiscal year, bringing the billings and payments into balance. 42 C.F.R. § 413.60. The intent is that the interim payments shall approximate actual costs. 42 C.F.R. § 413.64(b).

Medicare regulation 42 C.F.R. § 413.64(h)(5) states, in relevant part, that the biweekly "payment amount will be computed ... to approximate the cost of ... services furnished by the provider during the period for which payment is to be made, and each payment will be made two weeks after the end of such period of service."

Therefore, the payment received by VNA on December 11, 1987 was for the period November 14, 1987 to November 27, 1987. The VNA had ceased providing patient services on November 9, 1987. VNA did not incur any costs for that period and was not entitled to any payment.

When the relationship between two parties is one of trust and confidence, the party in whom the trust and confidence are reposed must act with good faith. *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). Actual fraud is not required to be shown. *Id.*

■ Because of the special nature of the PIP program, Medicare and VNA were in such a relationship as to impose a duty upon VNA to notify Medicare promptly of the cessation of its operations. VNA had several contacts with Medicare or its representative between November 9 when it ceased operations and the December 11 payment. In none of these did VNA indicate that it had ceased operations. VNA made extraordinary arrangements to pick up the December 11 payment in person.

Under Pennsylvania law, a constructive trust arises "where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Moreland v. Met-*

*rovich*, 249 Pa.Super. 88, 97 375 A.2d 772, 776 (1977). Generally speaking, a constructive trust arises whenever the court finds it necessary to meet the demands of justice, morality, conscience and fair dealing. *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974). The PIP payment received by VNA from Medicare on December 11, 1987 was for a period when VNA provided no services and incurred no cost. VNA would be unjustly enriched if it were permitted to keep it. The PIP payment received by VNA on December 11 is held by it as constructive trustee. VNA was unjustly enriched to the detriment of Medicare. The only equitable solution is to permit the return of the December 11 payment to Medicare.

Under Bankruptcy Code § 541, where the debtor holds only legal title to property, but the beneficial interest in the property belongs to another, such as in the case of a constructive trust, the interest of the estate does not rise above that bare legal title. Thus, § 541 would require that the payment be returned to Medicare.

We must also examine § 544. U.S.C. § 544 states, in relevant portion:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists ...

The question then becomes whether, under Pennsylvania law, an execution creditor can obtain a position superior to that of the beneficiary of the trust.

It has always been the law in Pennsylvania that judgments against the owner of the apparent title are not valid as liens upon the equitable titles of others in the land, even though of these equitable titles, neither actual nor constructive notice has been given to the judgment creditor before or at his receiving of the judgment. *Hemminger v. Leidigh,* 21 Dist. & Co. Rep., 287 (1934).

"Judgment creditors are not protected against trusts of which they have no notice, or allowed in equity to hold against the cestui que trust." *Kauffman, et al v. Kauffman, et al,* 266 Pa. 270, 275, 109 A. 640 (1920).

If anything is settled by reason and authority, it is, that a judgment-creditor is not entitled to the protection of a purchaser of a legal title against an equitable owner or his creditors, or to any advantages which his debtor had not. *Reed's Appeal,* 13 Pa. 475, 478 (1850).

[See also *Shryock v. Waggoner,* 28 Pa. 430 (1857); *Feig, et al v. Meyers,* 102 Pa. 10 (1882); *Sill v. Swackhammer,* 103 Pa. 7 (1883); *McLaughlin v. Fulton,* 104 Pa. 161 (1883); *Landell's Appeal,* 105 Pa. 152 (1884); *Rubinsky v. Kosh, Guardian, et al,* 296 Pa. 285, 145 A. 836 (1929).]

Under state law, neither a judgment creditor nor an execution creditor may prevail over the beneficiary of a constructive trust. Accordingly, the monies in question properly belong to Medicare.

### ORDER

It is hereby ORDERED:

1. Vanguard Federal Savings and Trust Association will return monies it received from such fund to the trustee.

2. The trustee will return the total amount of the payment to the Secretary of Health and Human Services subject to any administrative expense applicable to that fund.